

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-29-2009

# Daniella Araoz v. USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2248

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Daniella Araoz v. USA" (2009). *2009 Decisions.* Paper 1116.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1116

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-2248
_____

DANIELLA ARAOZ,
an infant by her guardian ad litem,
DEICY MARTINEZ-FAM

v.

UNITED STATES OF AMERICA;
PALISADES MEDICAL CENTER NEW YORK
PRESBYTERIAN HEALTHCARE SYSTEMS,
JOHN DOES 1-5 (a class of fictitiously named doctors);
JANE ROES 1-5 ( a class of fictitiously named nurses);
DOE PHYSICIAN GROUP, PC 1-5 (fictitious designations representing the class of as
yet unknown entities affiliated or connected in any matter with the individual defendants
in this matter or with plaintiff's care and vicariously, administratively,
or directed responsible for the other medical provider's actions and for plaintiff's injuries

Daniella Araoz,
Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 06-cv-02149)
Magistrate Judge:  Honorable Patty Shwartz
_____

Submitted Under Third Circuit LAR 34.1(a)
May 20, 2009

_____

Before: RENDELL and GARTH, <u>Circuit Judges</u>,
and VANASKIE,<sup>*</sup> <u>District Judge</u>.

(Filed June 29, 2009)
_____

OPINION OF THE COURT

RENDELL, <u>Circuit Judge</u>.

Appellant Daniella Araoz, an infant, by her guardian ad litem, Deicy Martinez-Fam (hereinafter, "Appellant" or "Plaintiff"), appeals the verdict rendered against her and in favor of the United States of America by the Magistrate Judge after a five-day bench trial,[1] concluding that Plaintiff had failed to meet her burden of proof of malpractice under the Federal Tort Claims Act, 28 U.S.C. § 2671-80 ("FTCA"). The Magistrate Judge made Findings of Fact and Conclusions of Law in a thorough 30-page opinion, and concluded that, based upon the evidence presented, Araoz had not proven that Dr. George Kyreakakis, the doctor who delivered Plaintiff, was more likely than not the cause of injuries sustained during her delivery on April 6, 2003. We will affirm.[2]

_____

<sup>*</sup>Honorable Thomas I. Vanaskie, Judge of the United States District Court for the Middle District of Pennsylvania, sitting by designation.

[1] The parties consented to the jurisdiction of the United States Magistrate Judge to resolve the case. *See* 28 U.S.C. § 639(c).

[2] We have jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 636(c)(3). We review the Magistrate Judge's findings of fact for clear error and exercise plenary review over her conclusions of law. *Brisbin v. Superior Valve Co.*, 398 F.3d 279, 285 (3d Cir. 2005).

Plaintiff's principal contention is that the Magistrate Judge went beyond the record to conduct factual research that influenced her decision making and, therefore, reversal is required. Specifically, she contends that "factual research was undertaken to search out extraneous cases involving brachial plexus injuries." (Appellant's Br. 17) Plaintiff urges that "[f]ootnote 35 of the Magistrate's Findings and Conclusions is the basis for the Magistrate's ultimate conclusion that the plaintiff failed to meet her burden of proof." (Appellant's Br. 20) She contends not only that the Magistrate Judge's conduct was improper, but that the matter should be remanded to a different judge in the exercise of our "supervisory power." (Appellant's Br. 32)

Defendants dispute the contention that the Magistrate Judge erred in any way or that anything she did was prejudicial. After a review of the record in this case, together with the Findings of Fact and Conclusions of Law of the Magistrate Judge, we agree.

The Magistrate Judge engaged in an extensive review of the facts adduced through stipulation and through live testimony. Dr. Kyreakakis testified that he had no recollection of the particular delivery, but testified extensively as to his standard practice in connection with a delivery of this kind. The type of injury that occurred to Plaintiff, namely, brachial plexus injury, can occur during birth, but the parties, and their experts, disagreed as to how, and with what frequency. According to Dr. Kyreakakis's delivery notes, after the Plaintiff's head was delivered, he confronted shoulder dystocia, which was described as "difficulty delivering a baby vaginally because the anterior shoulder is stuck behind the mother's symphisis pubis." (App. 12.) There was extensive testimony

3

as to what procedures he would then follow, and testimony from the mother and father, who could not identify any specific trauma or indication of difficulty during the delivery. Shoulder dystocia is viewed as an obstetrical emergency because, as the Magistrate Judge noted, referencing both experts, after five to seven minutes, the baby could lose blood flow and oxygen to the brain. Dr. Kyreakakis employed the McRoberts maneuver to change the shoulder position. He indicated his awareness that "excessive traction" should not be used in moving a baby's head in this situation, and that he would normally use no more than five pounds of force to release the shoulder. (App. 13.)

Both parties' experts agreed that the application of gentle traction was within the standard of care used by obstetricians when confronting shoulder dystocia during a delivery. Dr. Kyreakakis testified that the amount of traction he usually applies is "akin to the pressure used to peel a banana after the top of the banana is opened and one can begin to peel it." (App. 17.)

After delivery, a pediatrician examined Plaintiff and found that she had sustained a brachial plexus injury. Plaintiff's father noticed that when the doctor pulled Plaintiff's arms upward, her "left arm stay[ed] upright, but [her] right arm fell to its side." (App. 18.) The Magistrate Judge defined the brachial plexus as "a network of nerves that branch out from the cervical spine and go to different muscles in the upper extremities and shoulders." (App. 18.) An injury occurs when these nerves are torn.

Dr. Daniel Adler, Plaintiff's pediatric neurological expert, testified that the type of force that can be applied to the shoulder to cause an injury to the brachial plexus would

4

include force from a car accident, impact during football, or a fall from a height.

Plaintiff's obstetrical expert, Dr. Arnold Sperling, testified that the natural forces of labor would be insufficient to cause the type of injury that Plaintiff suffered.  Both experts agreed that excessive doctor-applied traction can cause a brachial plexus injury, but Defendants' experts asserted that other forces can also cause the injury.  These included the force of uterine contractions and the force of the mother's pushing.

The Magistrate Judge engaged in an extensive review of the testimony and evidence regarding causation and treatment.   The discussion was comprehensive and balanced, and included references relied upon by the various experts, including some to the effect that brachial plexus injury can be sustained during delivery without application of excessive traction by the doctor.

The Magistrate Judge then reviewed the applicable law, including the FTCA and the substantive law of New Jersey.   She noted that Plaintiff, in order to prevail on her claim, must prove:  the applicable standard of care; that the defendant deviated from that standard; and that the deviation proximately caused the injury.  The Magistrate Judge then concluded:

> The Court has carefully considered all the evidence in light of the burden of proof that plaintiff bears.  Both Dr. Sperling and Dr. Quatrell acknowledged that Dr. Kyreakis's[*] decision to apply McRoberts and subprapubic[*] pressure were proper responses to the should[*] dystocia and that the application of gentle traction is permitted.   The sole issue, therefore, is

---

[*] Errors in original.

5

whether or not the plaintiff has produced sufficient evidence to show that Dr. Kyreakakis applied an excessive amount of force. Although Daniel* Araoz suffered an injury, and the Court is sympathetic to her and her family, there is insufficient evidence for the Court to find on this record that it is more likely than not that Dr. Kyreakakis caused her injury by the amount of traction he applied in addressing the shoulder dystocia.

(App. 32.)

The Magistrate Judge then bolstered her conclusion with additional analysis from the record, noting that the physician experts had discussed various articles involving the analysis of many births. The court considered Plaintiff's criticism of the articles that the defense relied on, and also considered studies that Plaintiff presented, and other studies showing that brachial plexus injury can occur in babies who do not experience shoulder dystocia and without the application of traction.

The Magistrate Judge also included a footnote noting that other courts, in cases not cited by the parties, have found, based on literature presented to them, that brachial plexus injury can occur spontaneously and as a result of causes other than doctor-applied traction.

We have little difficulty finding that the footnote complained of was informational and was not the basis of the Magistrate Judge's conclusion. We conclude, further, that the Magistrate Judge did not err in her Findings of Fact and Conclusions of Law, and that she did not improperly rely on "extraneous research" in reaching her decision.

Accordingly, we will AFFIRM the Order of the District Court.

6